UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-81921-RAR

**ROBERT TYRONE HAYES**,

    Plaintiff,

v.

**ALFONSO STARLING**, *et al.*,

    Defendants.

_____/

### ORDER DISMISSING AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon Plaintiff's Amended Complaint seeking relief under 42 U.S.C. § 1983. *See* Am. Compl. [ECF No. 7]. After screening Plaintiff's original Complaint [ECF No. 1], as required by 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court "determined that this action should be dismissed for failure to state a claim." Order Dismissing Case [ECF No. 6] at 2. Nevertheless, since Plaintiff had not previously been given the opportunity to amend his Complaint, the Court allowed Plaintiff to file an Amended Complaint to cure the deficiencies present in his original Complaint. *Id.* at 5 (citing *Troville v. Venz*, 303 F.3d 1256, 1260 n.5 (11th Cir. 2002)). After reviewing and screening the Amended Complaint, the Court finds that it still fails to state a claim upon which relief can be granted and must, again, be **DISMISSED**.

### LEGAL STANDARD

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." *Id.* §

1915A(c). In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint[] or any portion of the complaint," when it is (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted[;]" or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). Similarly, under § 1915(e)(2), "the court *shall* dismiss [a] case *at any time* if the court determines that . . . the action" fails for the same enumerated reasons articulated under § 1915A. *Id.* § 1915(e)(2)(B) (emphasis added).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

## ANALYSIS

Plaintiff raises the same three claims—against three defendants who were employed at the Palm Beach County Jail in and around September 2020—as he did in the original Complaint. *See generally* Am. Compl. As the Court summarized in its previous Order:

> [Plaintiff] claims Defendant [Deputy Alex] Thompson, a jail official, conducted an unreasonable search of Plaintiff's person and committed a sexual assault during that search. In addition, Plaintiff claims Defendant [Sergeant Kowana] Alfred, a supervising sergeant for the county jail, retaliated against Plaintiff by purportedly threatening solitary confinement when Plaintiff reported the alleged sexual assault. Plaintiff also asserts a due process claim against Defendant [Major Alfonso] Starling, a supervising major for the county jail, for failing to resolve Plaintiff's grievances properly.

Order Dismissing Case [ECF No. 6] at 1 (internal citations omitted).  While Plaintiff has attempted to rectify the deficiencies in his original Complaint, the Court must again dismiss Plaintiff's Amended Complaint for failing to state a claim upon which relief can be granted.  *See* 28 U.S.C. § 1915A(b)(1).

### I. *Defendant Thompson's Hybrid Fourth/Eighth Amendment Claim*

The Court first turns to Plaintiff's claims against Defendant Thompson.  Plaintiff avers that Deputy Thompson "unlawfully strip searched Plaintiff Hayes for no reason relating to any penological interest," in violation of Plaintiff's Fourth Amendment rights.  Am. Compl. at 6.  Plaintiff further alleges that, during the strip search, Defendant Thompson infringed upon Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by "noticeably fondl[ing] [Plaintiff's] penis while staring intently at the Plaintiff's gential[s] and later his exposed anus.  This behavior was not exibited [sic] during any searches of previous or later inmates."  *Id.*  Courts have recognized a hybrid Fourth and Eighth Amendment claim can be brought against prison officials conducting an unreasonable strip search if a plaintiff alleges that the search was both "unreasonable" and "conducted in an abusive manner."  *Weeks v. Grady*, No. 18-CV-1373, 2019 WL 11278455, at *5 (N.D. Ga. Sept. 26, 2019) (citing *Powell v. Barrett*, 541 F.3d 1298, 1314 (11th Cir. 2008) (en banc)), *report and recommendation adopted in part and modified in part*, 2020 WL 6336186 (N.D. Ga. Oct. 29, 2020).[1]

---

[1] "The Eighth Amendment prohibitions against cruel and unusual punishment do not apply to pretrial detainees," instead, pretrial detainees are protected by the Substantive Due Process Clause of the Fourteenth Amendment.  *Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1546 (11th Cir. 1994) (en banc). In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court held that, for pretrial detainees alleging excessive force claims, an "objective-reasonableness test" applies instead of the Eighth Amendment-based "malicious-and-sadistic standard" which had previously been applied to both pretrial detainees and prisoners.  *Crocker v. Beatty*, 995 F.3d 1232, 1248 (11th Cir. 2021).  All that being said, the Eleventh Circuit has held that *Kingsley* only applies to excessive force claims, and so the Court has no reason to believe that the test for unreasonable strip searches—which is also based on Eighth Amendment jurisprudence—has been modified or changed just because Plaintiff is a pretrial detainee.  *See Dang by and*

Plaintiff claims that his strip search violated the Fourth Amendment since it was done "for no reason relating to any penological interest," and that there was no basis to search him because he "had no history of possession of contraband or weapons." Am. Compl. at 3, 6. He also alleges that the search was abusive, in violation of the Eighth Amendment, because it was used as a pretext for Deputy Thompson to sexually harass Plaintiff. *Id.* at 6. To determine whether prison officials have conducted a reasonable search under the Fourth Amendment, the Supreme Court has instructed federal courts to "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Likewise, a search becomes an Eighth Amendment violation when it is "devoid of penological merit and imposed simply to inflict pain." *Harris v. Ostrout*, 65 F.3d 912, 915–16 (11th Cir. 1995); *see, e.g.*, *Evans v. Stephens*, 407 F.3d 1272, 1281 (11th Cir. 2005) (holding that a strip search violated the Eighth Amendment where "[e]ach Plaintiff was forced to disrobe, ridiculed, and penetrated by an object in front of the other.").

Based on the allegations in the Amended Complaint, the Court cannot conclude that the strip search was conducted in violation of the Constitution. The Supreme Court has recognized that "[a] detention facility is a unique place fraught with serious security dangers," and, because of these realities, prison officials may conduct "visual body-cavity inspections" without probable cause. *Bell*, 441 U.S. at 559–60. Insofar as Plaintiff argues that the strip search itself was an unreasonable search and seizure that took place without probable cause, binding precedent is clear that this does not amount to a constitutional violation—especially considering that Plaintiff admits

---

through *Dang v. Sheriff, Seminole Cnty. Fla.*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017) ("*Kingsley* involved an excessive force claim, not a claim of inadequate medical treatment due to deliberate indifference. Therefore, it is not squarely on point with and does not actually abrogate or directly conflict with our prior precedent identifying the standard we apply in this opinion.").

he was not the only person to be strip searched that day and, in fact, was part of a group of twelve inmates who were strip searched as part of a larger, random search of all cells. Am. Compl. at 2–3; *see also Powell*, 541 F.3d at 1306 ("The bottom line of the *Bell* decision is that . . . the Supreme Court concluded that the visual body cavity inspections—the most intrusive part of the strip searches in that case—were reasonable under the Fourth Amendment. The policy the court upheld required that searches be conducted on every inmate after each contact visit, even without the slightest cause to suspect that the inmate was concealing contraband.") (internal citations omitted); *Moton v. Walker*, 545 F. App'x 856, 859 (11th Cir. 2013) (affirming that "a prison official does not need reasonable suspicion to conduct a visual body cavity inspection," even if the official required the inmate "to expose his rectum three times" during the search).[2]

Nevertheless, an otherwise normal and reasonable search can transform into a "cruel and unusual punishment" if it was done with the express purpose of humiliating or harming an inmate. Plaintiff specifically alleges that Deputy Thompson "fondle[d] his penis" and "started intently" at his genitals and anus, and that no other inmate that was strip searched that day received the same

---

[2] Plaintiff argues that his strip search was conducted in violation of Fla. Stat. § 901.211 and claims that he told prison officials the same in a grievance he filed shortly after the search. *See* Am. Compl. at 3 ("Plaintiff Hayes also filed a grievance . . . concerning the unlawful strip search. In this grievance he cited [Fla. Stat.] § 901.211(2)(a) explaining the requirements of the statute in regards to strip searches."). While this statute requires "probable cause" to conduct a strip search, it is questionable whether it applies to inmates in a carceral facility for two reasons. First, the text of the statute indicates that this probable cause provision only applies to persons recently "arrested for a traffic, regulatory, or misdemeanor offense." Fla. Stat. § 901.211(1), (2); *see also Jenkins v. State*, 924 So. 2d 20, 29 n.1 (Fla. 2d DCA 2006) ("The provisions of section 901.211(2) with respect to arrests for 'traffic, regulatory, or misdemeanor offense[s]' have no application here, since the arrest of Jenkins was for a felony drug offense."), *approved by Jenkins v. State*, 978 So. 2d 116 (Fla. 2008). Second, the Florida Department of Corrections' regulations only require "reasonable suspicion" to conduct <u>body orifice and cavity searches</u>, so it would be illogical to assume that probable cause would be needed to conduct a less-intrusive search on an inmate. Fla. Admin. Code R. 33-602.204(3)(b). Although Plaintiff was not in a facility operated by the Florida Department of Corrections at the time of the alleged misconduct, pretrial detainees in jails are usually treated the same as prisoners in state-run facilities for constitutional purposes. *See Bell*, 441 U.S. at 546 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights <u>of both convicted prisoners and pretrial detainees</u>.") (emphasis added).

treatment. Am. Compl. at 6. Even so, the Court cannot conclude that the strip search conducted by Deputy Thompson was "sadistically and maliciously applied for the very purpose of causing harm." *Sconiers v. Lockhart*, 946 F.3d 1256, 1266 (11th Cir. 2020). A strip search, by its nature, requires a prison official to look at (and sometimes touch) the genitals and anus of a prisoner. *See Moton*, 545 F. App'x at 859–60 ("It is not clearly established that requiring an inmate to bend over, spread his buttocks, and cough . . . is an unreasonable and abusive search."); *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (holding that an officer touching a plaintiff's penis during a strip search did not "involve a harm of federal constitutional proportions"). A plaintiff must allege truly significant and abusive practices by prison officials to present a cognizable Eighth Amendment claim. *See, e.g.*, *Evans*, 407 F.3d at 1281 ("Stephens inserted the same baton or club—without intervening sanitation—in each Plaintiffs' anus and used the same baton or club to lift each man's testicles."); *Williams v. City of Cleveland*, 771 F.3d 945, 952–53 (6th Cir. 2014) ("[T]he proposed second amended complaint alleges that both Williams and Bealer were strip searched and sprayed [with a hose] in the presence of other detainees."); *United States v. Edwards*, 666 F.3d 877, 885 (4th Cir. 2011) ("We conclude that Bailey's use of a knife in cutting the sandwich baggie off Edwards' penis posed a significant and an unnecessary risk of injury to Edwards, transgressing well-settled standards of reasonableness.").

Moreover, Plaintiff has only alleged one isolated instance of a potentially improper touching by a prison official—which is generally insufficient under this Circuit's precedent to raise an actionable Eighth Amendment claim. *See DeJesus v. Lewis*, 14 F.4th 1182, 1199 (11th Cir. 2021) ("We recognize that not every invasive touching by a prison official amounts to an Eighth Amendment violation."); *Weeks*, 2020 WL 6336186, at *4 ("While Grady's alleged actions during the seemingly unnecessary strip search, if true, are disgraceful, this singular incident does not

constitute either severe or repetitive sexual abuse."); *Woodard v. Eastberg*, No. 20-cv-216, 2020 WL 4573371, at *3 (N.D. Fla. July 10, 2020) ("[I]solated episodes of harassment and touching, even where it involves a sexual touch, do not rise to the level of an Eighth Amendment claim."), *report and recommendation adopted*, 2020 WL 4572689 (N.D. Fla. Aug. 7, 2020). In sum, even if the Court could conclude that Deputy Thompson's actions amounted to an improper sexual touching that was without a penological purpose, it was not "sufficiently serious" to transform the touch into an Eighth Amendment violation. *Sconiers*, 946 F.3d at 1265. Thus, Plaintiff has failed to state a claim against Deputy Thompson.

## II. *Defendant Alfred's Retaliation Against Plaintiff*

Next, Plaintiff brings a claim against Sergeant Kowana Alfred for violating his rights under the First and Eighth Amendments of the Constitution. Plaintiff alleges that he went to Sgt. Alfred to report the strip search conducted by Deputy Thompson, but that Sgt. Alfred "stat[ed] that a strip search is not a [Prison Rape Elimination Act] issue." Am. Compl. at 4. When Plaintiff "refused to [accept] this explanation," Sgt. Alfred purportedly told Plaintiff that "he would be move[d] to some place more comfortable," which Plaintiff took as a threat to send him to solitary confinement if he continued to pursue this claim. *Id.* Plaintiff argues that these actions were an unconstitutional attempt to retaliate against Plaintiff for reporting a sexual assault committed by a prison official, and that Sgt. Alfred's threat interfered with Plaintiff's "right to petition the Government for redress of his grievance" under the First Amendment. *Id.* at 7.

As the Court explained in its previous Order dismissing the original Complaint, retaliation by a prison official in response to an inmate's speech is not actionable unless "a person of ordinary firmness [would] have been deterred from exercising their free speech." Order Dismissing Case [ECF No. 6] at 4 (citing *Thomas v. Lawrence*, 421 F. App'x 926, 928 (11th Cir. 2011)). Plaintiff

has not cured this deficiency since the Amended Complaint indicates that he continued to seek review of his sexual assault claim <u>after</u> Sgt. Alfred's alleged threat.  Specifically, Plaintiff claims that he submitted a grievance on September 6, 2020, and that Sgt. Alfred spoke to Plaintiff about the grievance (and made the aforementioned threats) three days later, on September 9, 2020.  Am. Compl. at 4.  Plaintiff admits that he <u>appealed</u> that grievance after Sgt. Alfred officially denied it <u>on September 16, 2020</u>.  *Id.* at 5.  In other words, despite Sgt. Alfred's perceived threat to place Plaintiff in solitary confinement, Plaintiff continued to seek redress of his sexual assault claim through the jail's grievance system.  Plaintiff, therefore, cannot show that "the defendant's retaliatory conduct adversely affected the protected speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).  Consequently, Plaintiff has failed to state a claim of retaliation under the First Amendment against Sgt. Alfred.

### III.  Defendant Starling's Failure to Review Plaintiff's Grievance

Plaintiff's final claim is against Major Alfonso Starling.  According to Plaintiff, Major Starling improperly denied Plaintiff's final appeal of his sexual assault grievance by rubber-stamping earlier denials which improperly interpreted Fla. Stat. § 901.211.  *See* Am. Compl. at 5 ("Defendant Starling found Plaintiff's grievance not valid by send[ing] yet another copy of the initial response of the same cut and pasted statute 901.211.").  Plaintiff reasons that, by adopting the same arguments as other prison officials, Major Starling "became complicte [sic] with the other defendant[s] to impose cruel and unusual punishment upon the Plaintiff." *Id.* at 7.  As the Court found in its previous Order, "a prison grievance procedure does not provide an inmate with a constitutionally protected interest," meaning that § 1983 does not allow Plaintiff to bring a claim against Major Starling for failing to "properly" resolve his sexual assault grievance.  *Bingham v. Thomas*, 654 F.3d 1171, 1177–78 (11th Cir. 2011).  Plaintiff also fails to raise this claim under a

theory of supervisory liability because he does not allege that Major Starling "directly participated in the unconstitutional conduct or that a causal connection exists between [Major Starling's] actions and the alleged constitutional violation," i.e., Deputy Thompson's sexual assault. *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1047–48 (11th Cir. 2014). Consequently, Plaintiff has not stated a claim against Major Starling upon which relief can be granted.

## CONCLUSION

The Court provided Plaintiff with an opportunity to amend his Complaint to raise cognizable claims under 42 U.S.C. § 1983. Plaintiff's Amended Complaint repeats many of the same mistakes as his original Complaint and fails to state a claim upon which relief can be granted. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1). Since the Court has already provided Plaintiff with the opportunity to amend his Complaint, dismissal with prejudice is appropriate since any further "amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001); *see also Kincaid v. Lockwood*, No. 20-10062-CIV, 2021 WL 274811, at *1 (S.D. Fla. Jan. 27, 2021) (dismissing a § 1983 complaint with prejudice after plaintiff filed an Amended Complaint which "failed to state a claim" after previously being granted leave to amend to cure that deficiency). Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that the Amended Complaint is **DISMISSED** *with prejudice*. All pending motions, if any, are **DENIED** as moot. All deadlines are **TERMINATED**. This case is **CLOSED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 25th day of April, 2022.

RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE

cc: Robert Tyrone Hayes
0510993

Palm Beach County Jail
Inmate Mail/Parcels
P.O. Box 24716
West Palm Beach, FL 33416
PRO SE